FILED 18 APR '25 12:53 USDC-ORE

Charles W. Hemingway, Self-Represented
hemingwaych@bendnet.com
680 NW Bond St., Bend, OR 97703-3274
(458) 206-8682

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION 6

Case No: 6:25-cv-00640-MC

| | |
|---|---|
| Theresa Bradshaw, Mandy Bryant, Chris Daggett, & Penny Gartner, Homeless Individuals, On Behalf of Themselves And All Other Homeless Individuals In the Cabin Butte Vegetation Management Project, Deschutes National Forest and Eric Garrity and Charles Hemingway, Homeless Service Providers, all Self-Represented ) ) ) ) ) ) ) ) ) | |
| Plaintiffs ) | |
| v. ) ) ) | COMPLAINT FOR INJUNCTION/ TEMPORARY RESTRAINING ORDER UNDER FRCP RULE 65(b) Expedited Hearing Requested |
| Holly Jewkes; Bend-Fort Rock Ranger District , Deschutes National Forest; Jessica Bowron, Acting Director, U.S. National Parks Service; Brooke Rollins, U.S. Secretary of Agriculture & Unnamed & Unknown Contractors Engaged By The National Parks Service for the Cabin Butte Vegetation Management Project ) ) ) ) ) ) ) | |
| Defendants | |

Dated: 4/18/2025

15498

s/ Charles W. Hemingway, Self-Represented

## INTRODUCTION

COME NOW Plaintiffs seeking an emergency hearing for injunctive relief and a Temporary Restraining Order against Defendants to stop Defendants from implementing the closure of an area within the Deschutes National Forest that, if closed, will cause irreparable harm to more than 100 persons experiencing homelessness currently living within the area to be closed.   Closure at this time is scheduled for May 1, 2025, constituting an emergency.

Plaintiffs are four unhoused persons currently living on the land and two homeless service providers who bring services to these unhoused Plaintiffs and all others living on this National Forest land.

These four unhoused Plaintiffs are all disabled and represent 76 other unhoused persons with disabilities who currently reside on the land and who have filed disability complaints with Defendant U.S. Department Agriculture, which has failed to timely respond to their requests for reasonable accommodation.

Plaintiffs also are seeking relief on behalf of the estimated additional 40 unhoused persons living in the area to be closed who have not filed disability complaints but who similarly will be irreparably harmed if the May 1, 2025 closure goes forward.

## PARTIES

1

Plaintiffs Bradshaw, Bryant, Daggett and Gartner are four disabled homeless individuals who are being displaced on May 1, 2025, along with 76 other disabled persons who have filed

Disability Discrimination Complaints with the U.S. Department of Agriculture, and an estimated 40 to 60 others homeless individuals who also may have disabilities, from an area of the Deschutes National Forest within what is known as the Cabin Butte Vegetation Management Project (hereinafter "Cabin Butte project area". Homeless/unhoused persons have been allowed by Defendants to live at the same location within the Cabin Butte project area for up to the past 5 to 8 years with the full knowledge and grudging acquiescence of Defendant Forest Service. Plaintiffs Garrity and Hemingway are homeless service providers who have been assisting homeless individuals living on the land within the Cabin Butte project area for several years.

2

Defendant Rollins is the U.S. Secretary of Agriculture under whose jurisdiction the National Parks Services comes. Defendant Bowron is the former National Parks Service Comptroller who as of the date of this action is Acting Director for the National Parks Service. Defendant Jewkes is the Bend-Fort Rock Ranger District Supervisor for the Deschutes National Forest within which the Cabin Butte project area is located. Plaintiffs find it necessary to name as Defendants, unnamed and unknown contractors hired by the Deschutes National Forest to conduct work to carry out the Cabin Butte project area because Defendant Jewkes has failed to provide the names of these contractors despite a public request by Plaintiffs and because of Plaintiffs' concerns that given the approach of current national political leadership, Defendants Rollins, Bowron and/or Jewkes will permit work within the Cabin Butte project area to commence if only an injunction or TRO is issued against Plaintiffs Rollins, Bowron or Jewkes.

## BACKGROUND

1

The Cabin Butte project area is about 25,780 acres. The project involves a mix of understory and overstory thinning, primarily of ponderosa pine, but also removal of juniper trees, and fuels reduction for the purpose of restoring stand structure and fire hazard reduction. The project involves prescribed fire treatments, as well as road closures and decommissioning of roads within the Cabin Butte project area.

Scattered throughout the project area, but primarily within an estimated 900 acre sector, are estimates of up to 150 homeless persons who have lived on the land for years with the knowledge of the National Forest Service.

2

On October 11, 2019 a step required under the National Environmental Policy Act (NEPA), called Scoping (40 CFR Part 1501.7), was started by Deschutes National Forest personnel to determine if the planned Cabin Butte project would have any environmental consequences. On that date a scoping letter was sent to around 500 individuals, (none of which included those who were homeless and living within the Cabin Butte project area and who would be adversely affected), and organizations and agencies (none of which were apparently organizations and agencies engaged in providing assistance to homeless persons located within the Cabin Butte project area). This appears to have been the start of an apparent public notice period, but there were no press releases, no published legal notices or public notice of any kind about the Cabin Butte project on or about October 11, 2019.

3

On May 13, 2022 notice of the availability of a Draft Environmental Assessment (EA) was given in a "Dear Reader" letter sent to an unknown number of interested citizens, none of

whom were apparently homeless individuals currently living on the land within the Cabin Butte project area nor any homeless service providers working with the population of homeless living there. The letter announced the start of a 30-day comment period and was also the subject of a classified ad in the Bend Bulletin, a newspaper of general circulation in the area.

4

During the comment period 15 emails or letters were received. Subsequently on November 18, 2022 the Forest Service initiated a 45-day "Objection Period Start". On that date the Forest Service caused to be published a Legal Notice in the Bend Bulletin newspaper. Buried within the fine print, however, was a notification that objections would be received only from the 15 of those who had previously submitted specific written comments during a designated 30-day public comment that began May 13, 2022.

In November 2022 Defendant Forest Service issued a Final EA (Exhibit 1), followed on December 31, 2023 with a Finding of No Significant Impact (FONSI) (Exhibit 2) that a full Environmental Impact Statement (EIS) was not required. Defendant Forest Service identified only one issue – a possible impact on the winter migration of mule deer throughout the project area during the project period. Defendant Forest Service concluded that this impact was not significant.

Throughout the scoping process and up to the issuance of the Final EA there was no mention of the presence of the significant number of homeless persons living within the project area whose lives would be adversely affected. It was only in the November 2022 Final EA that there was a first mention of "persons experiencing homelessness" living in the project area. Prior to that there were oblique references to persons engaged in long term dispersed camping within the project area in the Draft EA.

5

The Draft and Final EA referenced a 2010 study done by Defendant Forest Service that found there were 10 encampments within the project area and that a subsequent 2020 study found that this number had grown to 19 encampments. Although the Final EA was issued in November 2022, no further survey of encampments was done within the project area.

The great multitude of homeless residents of the Deschutes National Forest in the Cabin Butte project area are not there by their own choice but rather because of (1) policy choices of the City of Bend, far outside the homeless individuals' control, and (2) the high cost of living in the City of Bend.

6

Bend has experienced an enormous increase in the cost of housing in recent years, such that almost half of its renters are now "cost-burdened", paying 30-50% of their income on rent each month and a further 22% are *paying more than half their income* on rent. (See Joint Center for Housing Studies: Renter Cost Burden Shares High (2024), https://www.jchs.harvard.edu/arh-2024-cost-burden-share. This means many Bend residents are just one missed paycheck or unexpected health incident or auto repair from eviction and homelessness. Though the City has taken positive steps to expand housing supply and shelter capacity, it has not been remotely enough to keep up with demand. So more people are experiencing homelessness, and in particular, unsheltered homelessness, than ever, growing for nine straight years through 2023. (See Jack Harvel, Homeless Population Grows for Nine Straight Years, Bend Source Weekly (April 26, 2023).

7

But in tandem with being unable to comprehensively meet the needs of people forced to live on the streets due to the inability of the City to provide more shelter beds, in 2020 the City of Bend initiated a series of sweeps of three large homeless encampments within the city limits that caused a large number of unhoused persons to relocate to the China Hat location within the Cabin Butte project area. (Exhibit 3, pp. 1-5, 16) This exponential increase alarmed Defendant Jewkes to such an extent that she wrote to the Bend City Manager and to Deschutes County officials, raising alarm that a large influx onto National Forest lands of unhoused persons displaced due to sweeps of homeless encampments within the City would have a serious adverse effect on the China Hat location within the Deschutes National Forest. (Exhibit 3, p. 22).

This exponential increase in the number of unhoused persons moving to the China Hat location within the Cabin Butte project area was the subject of continuous media attention, which should have alerted Deschutes National Forest officials of the presence of these unhoused persons.

Deschutes National Forest officials were therefore well aware that the presence of these unhoused persons was an issue that should have been addressed as an environmental concern due to the impact on the human environment. But the Final EA maintained that the sole issue was the impact on the mule deer migration within the project area. The presence of homeless persons was never identified as an issue. The presence of "people experiencing homelessness" was addressed only in a single paragraph on Page 223 of the 399-page Final EA. (Exhibit 4).

In that November 2022 paragraph, however, Defendant Forest Service announced that it would work with local governments, community organizations, service providers, and others

during project implementation on a mitigation program to help relocate "persons experiencing homelessness" living on the land.

8

From November 2022 up to January 16, 2025 Defendant Forest Service took no action to follow up on their announcement of a mitigation program for the people residing in the Forest. But then, on January 16, 2025, Defendant Forest service abruptly issued a Press Release announcing that the Cabin Butte project would start May 1, 2025. (Exhibit 5) Defendant Forest Service also announced that the May 1st date would be a hard closure date and anyone remaining on or entering onto the land after that date would be subject to arrest and charged with criminal trespass that could result in a fine of up to $5,000 and up to 1 year in prison.

The January 16th Press Release constituted the first official notice to service providers and to those living on the land in the Cabin Butte project area that within 3 ½ months those living on the land would have to relocate.

After the issuance of the January 16th notice, service providers, on their own initiative without any coordination or assistance from Defendant Forest Service, began canvassing the homeless persons living within the project area about relocating. Severe winter conditions intermittently in February and March prevented those living on the land in the project area to even consider relocating. These same severe winter conditions also prevented service providers being able to reach the locations many individuals were camped for days and sometimes weeks. A 5-inch snow storm on or about April 1, 2025, followed by exceedingly muddy roads after the snow melted continued to hamper these homeless persons from being able to relocate and hampered the service providers who were trying to help them.

9

Working through winter weather conditions, as temperatures and driving conditions would allow, in February and March 2025 service providers began surveying the 100+ homeless living on the land about their issues and where they might wish to relocate to. A great many of those surveyed identified significant medical conditions and disabilities that hampered their ability to relocate, even in ideal conditions. As a result, 80 unhoused persons living on the land filled out Disability Discrimination Complaints following U.S. Department of Agriculture (USDA) procedures requesting reasonable accommodation. (Exhibit 6). For privacy reasons the actual 80 Discrimination Complaints submitted to Defendant USDA are not provided but will be submitted upon request by the Court. Exhibit 6 is a synopsis listing the initials of those who filed Disability Discrimination Complaints with the disabilities each claims listed beside their initials.

10

Additionally, Plaintiffs Garrity and Hemingway began reviewing in February and March 2025 the environmental documents used as the basis by the Deschutes National Forest to proceed with the Cabin Butte project. Plaintiffs Garrity and Hemingway concluded that the Forest Service focused on only one issue – impact on the land and biota within the project area – to justify the Cabin Butte project and failed to adequately address the NEPA requirement to consider impact on the human environment, both within and without the project area. Plaintiffs Garrity and Hemingway prepared a detailed analysis of environmental regulatory provisions documenting the failure of Defendant Forest Service to consider the impact on the human environment, which Plaintiffs Garrity and Hemingway provided to Defendant Forest Service. (Exhibit 7)

Plaintiffs Garrity and Hemingway also discovered that a provision in Defendant Forest Service's own regulation (Forest Service Handbook (FSH) 1909.15, Section 18) authorizes Defendant Forest Service to correct, supplement or revise environmental documents it has prepared in projects such as the Cabin Butte project, and to reconsider decisions to take action. Section 18 provides that this option should be considered where new information or changed circumstances that might affect the original decision comes into play. (Exhibit 8)

Accordingly, on March 25, 2025 Plaintiffs Garrity and Hemingway submitted to the Supervisor of the Bend-Fort Rock Ranger District (who has responsibility for the Deschutes National Forest and the Cabin Butte project within it) a request to reopen the Final EA and FONSI, redo the environmental documentation and reissue a new final decision to take action, delaying or cancelling the project until these actions had been accomplished. (Exhibit 9)

Plaintiffs' March 25th request to reopen was submitted for three reasons. First, knowledge that was in the possession of the Forest Service about the exponential growth in the number of homeless encampments within the Cabin Butte project area, particularly the area known as China Hat that should have triggered Defendant Forest Service that this was an issue which should have been taken into account, because of the second reason. The second reason is that in preparing the Draft EA and subsequently the Final EA, Defendant Forest Service failed to take into account the impact on the human environment, both within and without the project area. The third reason was the high percentage (estimated at 66%) of unhoused persons living within the Cabin Butte project area with medical conditions and disabilities that require reasonable accommodations.

11

On April 4, 2025 Defendant Forest Service responded to Plaintiffs' request to reopen by declining to reopen the environmental process, asserting that its environmental documentation was legally sufficient and advising Plaintiffs' that the original Forest Service decision to close the Cabin Butte project area on May 1, 2025 and displace the 100+ unhoused persons as of that date would stand.(Exhibit 10).

12

On April 8, 2025 Plaintiffs submitted to the Forest Service a Request to Reconsider based on lack of sufficient notice to the affected population, misapplication of its understanding of Section 18, FSH 1909.15, failure to consider the impact on the human environment and inaction on the 80 Disability Discrimination Complaints from unhoused residents in the Cabin Butte project area requesting reasonable accommodation. (Exhibit 11).

13

As of the date of this Complaint Plaintiffs aver that Defendant Forest Service have not responded to Plaintiffs' Request to Reconsider nor has Defendant Forest Service or Defendant USDA responded to Disability Discrimination Complaints requesting reasonable accommodation submitted by 80 of the unhoused individuals living in the Cabin Butte project area.

14

Based on this sequence of events Plaintiffs have initiated this Complaint for an Injunction/Temporary Restraining Order pursuant to FRCP Rule 65(b).

**JURISDICTION, VENUE & STANDING**

15

Jurisdiction is proper in this Court pursuant to 28 U.S.C. Sec. 1331 because this case involves a federal question in a civil action being taken by a Federal agency under U.S. law.

16

Pursuant to 28 U.S.C. Sec. 1391(e)(1) venue is proper in the District Court of Oregon because the four named homeless Plaintiffs reside in Deschutes County, in the State of Oregon. Venue is proper for Plaintiffs Garrity and Hemingway because both provide services to the named Plaintiffs and all similarly situated unhoused individuals living on National Forest land in the Cabin Butte project area.

17

Plaintiffs assert Standing in that there are federal interests that are implicated by Defendants' harmful actions toward Plaintiffs and that this Court can provide Plaintiffs with meaningful redress. Defendants' actions threaten the physical, mental and emotional well-being not only of Plaintiffs but all the other unhoused persons who submitted a Disability Discrimination Complaint with a Request for Reasonable Accommodation, as well as those who did not file a disability complaint but by Defendants' actions will lose all their property and also suffer physical, mental and emotional distress due to Defendants' actions.

## FOREST SERVICE FAILURE TO ACT HAS CREATED A PUBLIC HEALTH CRISIS THAT WILL CAUSE PLAINTIFFS AND THE SURROUNDING COMMUNITY AND JURISDICTIONS IRREPARABLE HARM IF A TRO IS NOT GRANTED

18

Plaintiffs aver that the involuntary displacement of more than 100 unhoused persons on May 1, 2025 will result in irreparable harm, adversely and grievously impact their physical health and mental well-being and in the case of some of the 80 persons who have filed Disability Discrimination Complaints seeking reasonable accommodation, will result in serious further deterioration of medical and mental health conditions which may even result in death.

19

Plaintiffs further aver that due to the lack of sufficient notice to Plaintiffs, due to the failure of Defendant Forest Service to implement a mitigation program it announced in November 2022 (Exhibit 4) in the Final EA and due to the harsh and lengthy winter conditions between the date Defendant Forest Service announced the closure (January 16, 2025) and the closure date (May 1, 2025), the named homeless Plaintiffs and the more than 100+ unhoused persons they represent will lose the homes they have had for many years, lose all their possessions and suffer irreparable property loss as a result of Defendants' arbitrary and capricious actions.

20

Plaintiff Hemingway avers that he and other service providers have been in the company of medical teams which do outreach into the China Hat encampments, such as Adventure Medics of Bend, OR, who have advised that given the sheer number of those being displaced, coupled with the number of significant medical conditions and disabilities (exemplified by the 80 people who have filed disability complaints), the pending May 1, 2025 displacement amounts to a public health crisis.

21

Throughout the Draft EA and Final EA process the Forest Service failed to acknowledge as an issue the presence of up to 120 to 130 homeless persons in China Hat, referring to their presence as "dispersed camping."

When questions asked by the public in review of the Draft EA eventually forced Defendant Forest Service to acknowledge the large numbers of "persons experiencing homelessness" it resulted in Defendant Forest Service adding a single paragraph at Page 223 of a 399 page document.

Acknowledging finally that there were a large number of homeless persons living in the Cabin Butte project area, Defendant Forest Service, at Page 223 of the Final EA, outlined a mitigation plan (Exhibit 4). The plan contained several components, such as engaging service organizations, churches, community groups, etc. to help the large number of homeless relocate. The process described at Page 223 called for the mitigation steps to occur during "implementation" to help unhoused persons living on the land to relocate.

22

But with the so-called "implementation" date days away, no action has been taken by Defendants. To date, no service providers have been contacted about a unified effort that would start at "implementation". The statement at Page 223 appears to be meaningless and to have been added simply so Defendants' local Forest Service managers could publish the Final EA.

Additionally, campers are currently being actively harassed by Forest Service law enforcement officers by being stopped arbitrarily on China Hat Road, issued expensive tickets for driving on manmade roads or other traffic offenses and issued tickets about the condition of their camps when campers are trying to clean up their areas so they can relocate. Campers report that Forest Service law enforcement officers have driven into their camps and berated them to get out now. (See Exhibit 12, Statements of Service Providers).

23

The date of the Final EA is November 2022. Yet more than two years – 28 months – has elapsed since Defendant Forest Service announced this mitigation plan in November 2022.

With the closure of the project area looming in days, by its inaction since November

2022, Defendant Forest Service has set the stage for a potential public health disaster due to the involuntary displacement with no authorized place to go of more than 100 homeless persons, the great percentage of whom have medical conditions and disabilities. At a community-wide homeless forum on February 25th staff from congregate and outdoor shelter programs in Bend were on a panel.  In response to a question presented to all those on the panel, down the line each said they were maxed out with no space available.

24

It also means that this population will be displaced en masse into the surrounding neighborhoods and towns with the consequent adverse impact on public services such as law enforcement, fire and safety, strain on medical services, etc.

Plaintiffs note a newspaper article published April 4, 2025 quoting Bend Mayor Pro Tem Megan Perkins, who described Defendant Forest Service's decision to proceed with the May 1st closure as "short-sighted."  Mayor Pro Tem Perkins added that she is concerned about the "strain this will put on other areas, cities and forests."  Mayor Pro Tem Perkins said:  "I'm very worried about it from the perspective of someone having to move and having no place to go and from the perspective of surrounding communities already strapped without sufficient resources to support the population."(Exhibit 3, page 43).

25

Plaintiffs contend that Defendant Forest Service has violated its own regulations about what should have been taken into account in the planning, dating back to November 2022 and in so violating its regulations has created a public health crisis. Defendant Forest Service was supposed to take into account social impacts on local governments such as

***Overburdened public services, police, fire, libraries, hospitals, jails, juvenile homes, social services, parks, playgrounds, swimming pools, increased traffic…abandoned cars, etc."[1]***

(Exhibit 13- Forest Service Handbook 1909.17 – Economic and Social Analysis Handbook, Chapter 30 – Social Analysis, Page 39)

Additionally, the Forest Service was also required to take into account the impact its actions might have on "affected persons", recognizing that its actions might produce: ***"Greater incidence of anxiety, mental illness, alcoholism and other drug abuse, suicide."[2]*** ( Exhibit 13 - Forest  Service Handbook 1909.17 – Economic and Social Analysis Handbook, Chapter 30 – Social Analysis, Page 38)

26

Had the Forest Service set up a working group of local governments, service agencies

---

[1] The economic impact the displacement en masse of more than 100 homeless is likely to have on already overburdened public services is illustrated by a KTVZ Channel 21 news item at Page 41 of Exhibit 3, News Articles. The item notes that ODOT spent $440,000 in 2024 clearing camps from ODOT properties along the highways in Bend. Displacement of that many people from China Hat will increase the number of displaced homeless seeking shelter on ODOT land, placing this financial burden on ODOT, on the city of Bend for the increased costs it will incur and on Deschutes County for increased costs the county will incur.

[2] A study published in the Journal of the American Medical Association found: "At least 500 000 people in the US experience homelessness nightly. More than 30% of people experiencing homelessness also have a substance use disorder. Involuntary displacement is a common practice in responding to unsheltered people experiencing homelessness. Understanding the health implications of displacement (eg, "sweeps," "clearings," "cleanups") is important, especially as they relate to key substance use disorder outcomes. Involuntary displacement is estimated to worsen overdose and hospitalizations, decrease initiations of medications for opioid use disorder, and contributed to deaths among people experiencing homelessness who inject drugs" *Population-Level Health Effects of Involuntary Displacement of People Experiencing Unsheltered Homelessness Who Inject Drugs in US Cities,* (JAMA 2023 Apr 10,;329(17):1478–1486.)

and organizations starting in November 2022 to plan an orderly relocation response, this

potential looming crisis could have been mitigated and likely avoided.

The inaction by the Forest Service justifies the issuance of a TRO to avert the pending

public health crisis and the issuance of an order from this Court to delay the Cabin Butte project

until the mitigation plan the Forest Service promised in the Final EA of November 2022 is

accomplished.

27

Plaintiffs assert that Defendant Forest Service's announcement on January 16, 2025 of a

hard and fast closure of the Cabin Butte project area on May 1, 2025 is simply not enough time

for the named unhoused Plaintiffs living on the land, the additional disabled individuals who

have filed Disability Discrimination Complaints and the additional unhoused people living on the

land to have a meaningful opportunity to relocate before the Forest Service seizes the only

homes they have – their RVs and trailers, seizes their other property and forces them off the only

home they have known, some for almost 8 years, with threat of arrest, a fine of up to $5,000

and/or a sentence of up to a year in prison.

**IRREPARABLE HARM TO INDIVIDUAL PLAINTIFFS IF A TRO IS NOT GRANTED**

28

Plaintiff Theresa Bradshaw has filed a Disability Discrimination Complaint. Plaintiff

Bradshaw is a victim of trauma and domestic violence who suffers from complex Post Traumatic

Stress Disorder (PTSD) due to the trauma and domestic violence she has suffered and due to her

long term chronic homelessness. Plaintiff Bradshaw further identifies lifelong Attention Deficit

Hyperactivity Disorder (ADHD) and major chronic depression as disabilities. Plaintiff

Page 17 – COMPLAINT FOR INJUNCTION/TEMPORARY RESTRAINING ORDER

Bradshaw has lived in the China Hat area of the Cabin Butte project area for more than 3 years and faces loss of her motor home, unless this Court will grant Plaintiffs a delay to allow all Plaintiffs to get their vehicles relocated, as the Forest Service said would be done after implementation in its November 2022 Final EA. Together with her motor home she will lose all her worldly possessions that are stored within it. Upon being forced to leave her motor home, Plaintiff Bradshaw will be unable to move to a shelter in Bend because all the shelters are at capacity and no beds are available. Plaintiff Bradshaw faces the prospect of moving from her motor home into a tent on the streets of Bend, which now only allows one night of tent camping under its updated 2023 homeless camping code. Further, Plaintiff Bradshaw will have no possessions to her name and no place for her dogs.

29.

Plaintiff Mandy Bryant and her partner Plaintiff Chris Daggett have called the Horse Butte location within the Cabin Butt project area home for more than three years. Plaintiff Bryant escaped domestic violence from a prior relationship and has filed a Disability Discrimination Complaint identifying complex PTSD as her disability. Plaintiff Daggett has filed a Disability Discrimination Complaint also identifying complex PTSD but also has back injuries from a work accident. In the past Plaintiff Daggett worked construction and barely made ends meet due to flare-ups of his PTSD and his back injuries that both limit his ability to work fulltime. Due to high rental costs in the Bend, OR area Plaintiffs Bryant and Daggett could not find an affordable place to live. Since relocating to the Cabin Butte project area three years ago Plaintiff Daggett has developed a trade, making wooden furniture which he has been able to market over the internet. Income from his trade does not provide him enough to live on, due to his PTSD, so he cannot afford to pay the high rents in the Bend area so that he can become

Page 18 – COMPLAINT FOR INJUNCTION/TEMPORARY RESTRAINING ORDER

housed again. Both Plaintiff Bryant and Plaintiff Daggett will lose their 5th Wheel and all their furniture and possessions unless this Court will grant Plaintiffs a delay to allow all Plaintiffs to get their vehicles relocated, as the Forest Service said would be done after implementation in its November 2022 Final EA. In addition Plaintiff Daggett will lose all the tools of his trade for his furniture making business that he has accumulated over the years.

30

Plaintiff Penny Gartner has filed a Disability Discrimination Complaint seeking reasonable accommodation. Plaintiff Gartner has lived in the China Hat location of the Cabin Butte project area for the past five years. Plaintiff Gartner has Complex PTSD from years of chronic homelessness and domestic and physical violence from prior relationships. Plaintiff Gartner also has Chronic Obstructive Pulmonary Disorder (COPD), which she has dealt with for years. Plaintiff Gartner has also recently been diagnosed with cancer, for which she is currently undergoing chemotherapy. Plaintiff Gartner has been offered the opportunity to move into a supportive housing unit in Bend, but the unit is small and will not accommodate all her possessions, plus she has two support dogs which she may or may not be able to keep at her unit. Even if she takes the supported housing unit, Plaintiff Gartner is faced with losing her motor home with all her possessions in it unless this Court will grant Plaintiffs a delay to allow all Plaintiffs to get their vehicles relocated, as the Forest Service said would be done after implementation in its November 2022 Final EA.

31

Plaintiffs Garrity and Hemingway have already experienced the adverse impact sweeps of large homeless encampments have on the homeless and on their ability to function as homeless service providers.

Both Plaintiffs Garrity and Hemingway witnessed sweeps of three encampment areas in the City of Bend over the past several years. Plaintiffs Garrity and Hemingway aver that in these cases the homeless people who were swept lost all their possessions and lost RVs and trailers they had called home. Plaintiffs Garrity and Hemingway suffered emotionally from their inability to know where those displaced moved to because they were consequently unable to help those displaced get to medical appointments, receive medical care and be provided with survival necessities they needed to live. Plaintiffs Garrity and Hemingway aver that they have personally seen the decline in health and the adverse medical consequences for displaced homeless persons due to being unable to get medical care, food or survival services.

Both Plaintiffs Garrity and Hemingway are personally aware of one individual, displaced in an encampment sweep in Bend from his RV where he had lived for several years, who subsequently died.

Plaintiffs Garrity and Hemingway aver that in the upcoming mass displacement of more than 100 persons, due to the substantially larger number of those being displaced from what they have previously witnessed, the adverse consequences they have witnessed will recur again but in larger numbers. Plaintiffs Garrity and Hemingway fear that given the size of the displacement, rather than just one person dying there, could be several who die.

**IRREPARABLE HARM IS BEING DONE TO INDIVIDUAL PLAINTIFFS DUE TO FAILURE TO RECOGNIZE EXPONENTIAL HOMELESS GROWTH AFTER ISSUANCE OF THE FINAL EA**

32

Defendants declined to consider Plaintiffs' Request to Reopen of March 25, 2025, stating that the public comment period had long passed. It is correct that notice of a 30-day public comment period was issued on May 13, 2022 by Defendants. But Defendants were also on notice of the exponential growth in the population of unhoused persons moving to the national forest lands in the Cabin Butte project area after the date of the Final EA in November 2022.

33

The exponential growth of homelessness in the Cabin Butte project area was alarming enough that Defendant Jewkes sent a letter to the Bend City Manager and to Deschutes County officials expressing her concern that a large sweep by the City of approximately 60 to 80 unhoused people from the Hunnell Road area of the city would cause a large influx of unhoused persons onto national forest lands in the Cabin Butte project area that would overburden the China Hat area of national forest lands. (Exhibit 3, p.22).

34

Defendant Jewkes was also on notice that the large number of unhoused persons living within the Cabin Butte project area generated such sufficient interest of local government officials, Deschutes County officials and state officials that in May 2024 a meeting was convened that included representatives from several federal agencies and representatives from the Oregon congressional delegation to discuss the matter. (Exhibit 3, p. 26)

35

Forest Service regulations require managers to stay abreast of new information and changed circumstances and if a project has not yet been implemented, to update the EA as necessary.

The regulations establish that managers are required to know about what is going on in their locality in order to determine social conditions that may impact a proposed project by reading newspaper articles, television, talking to people, etc. (Exhibit 13 -Para. 34.12, FSH 1909.17, Chapter 30 – Economic and Social Analysis Handbook), to wit: (1) Newspapers, radio, TV reports, personal observations from Forest Service staff patrolling the project area, talking to public officials and local citizens, etc. all highlighted the situation of homeless people living in the project area as a major, significant issue; (2) Defendant Jewkes herself tried to step in to halt a major displacement of the homeless in Bend that she surmised would have a major adverse impact and effect in the China Hat locale within the project area.

36

Plaintiffs contend that the exponential growth in the number of unhoused persons living in the Cabin Butte project area after November 2022 should have triggered an obligation on Defendant Forest Service to implement Section 18 of FSH 1909.15 (Exhibit 8) and reopen the Final EA to take into account this exponential growth and the NEPA requirement to consider impact on the human environment.

37

Plaintiffs contend that Section 18 of FSH 1909.15 (Exhibit 8) does away with any attempt by Defendant Forest Service to claim that the failure to respond within the 30-day notice

and comment period prevents a legal challenge of a project. Plaintiffs contend that Section 18 is designed to address situations such as where a 30-day notice and comment period is long past and final environmental documents and decisions to take action have been issued. Section 18 specifically required Defendants to take into account new information and changed circumstances. Plaintiffs content that Section 18 therefore permits this legal challenge despite a 30-day comment period having elapsed years in the past.

38

Defendants further claim in denying our March 25, 2025 Request to Reopen that Defendant Forest Service was aware of the presence of unauthorized encampments within the project area, so this was not new information or changed circumstances. Plaintiffs respond that it was not the presence of unauthorized encampments within the project area that was the new information or changed circumstances. Rather, it was the exponential increase in the number of unauthorized encampments after the issuance of the Final EA in November 2022, an exponential increase that swelled the number of unauthorized encampments from 19 in a 2020 Forest Service survey to upwards of 90 encampments in 2023-2024 within the project area. This constituted new information and changed circumstances within the meaning of Section 18 that should have alerted Defendant Forest Service that it was necessary to correct, supplement and/or revise the environmental documents and reconsider the final decision to take action.

39

As previously noted, Defendant Jewkes herself expressed alarm in her July 11, 2023 letter to city and county officials that the mass displacement of homeless from Hunnell Road in Bend, given already overburdened land in the China Hat area in recent years due to the increased

number of encampments, created a potentially untenable situation for the Forest Service. This was the new information and constituted changed circumstances that required correction, supplementation and revision of the previously completed environmental documents and required consideration of the final decision to take action.

40

Plaintiffs contend that Defendants' failure to implement Section 18, which would have required Defendants to consider the impact on the human environment of those living on the land has caused them irreparable harm that will lead to increased illness, exacerbation of already serious medical conditions and disabilities and the loss of their homes and property due to Defendants' rush to close the Cabin Butte project area on May 1, 2025 without adequate notice to them.

**FAILURE TO ACKNOWLEDGE THE IMPACT ON THE HUMAN ENVIRONMENT AS AN ISSUE BY DEFENDANT FOREST SERVICE IS DOING IRREPARABLE HARM TO PLAINTIFFS**

41

Plaintiffs' Exhibit 7 is a Memorandum for Record that contains more than 70 references to terms like *"quality of the human environment, "relationship of people with the environment", "planning and decision making that affects the human environment", "the way people live", "impact on society as a whole", "geographic area that includes the people most affected", "human contexts of proposed actions" "civil rights and environmental justice," (emphasis added)* and more.

42

Most of these terms are taken directly from Defendant Forest Service's own regulations. These are factors that the Deschutes National Forest was supposed to take into account in identifying issues to be addressed in the Environmental Assessment (EA) and Finding of No Significant Impact (FONSI) – but did not.

43

Defendants identified only one issue. That issue dealt solely with the impact of mule deer migration on the geographical area of the project, ignoring the requirement to consider effects and impacts within and without the project area and particularly on the human environment.

44

Defendants' failure to consider impacts on the human environment, not only on the lives of those who have lived on the land for years with the acquiescence of Defendant Forest Service but also the impact on the human environment for the citizens, governments and public services where these disabled unhoused individuals will be displaced on May 1, 2025, does irreparable harm and renders the FONSI and EA defective. Plaintiffs will suffer the irreparable harm of losing their homes, all their property, and in the case of several individuals who are working, will potentially lose their livelihoods.

**REQUIREMENTS OF FRCP RULE 65**

Plaintiffs are before this Court pro se. Rule 65(b)(1)(B)'s requirements impose a duty on movant's attorneys. Given that Plaintiffs are pro se and without an attorney, Plaintiffs request that the Court find that the requirements of Rule 65(b)(1) are met. (See *Van Hung v. Schaaf*, Case Number 19-cv-01436-CRB, U.S. Dist. Ct for the Northern District of California (Mar.9, 2019).

Plaintiffs, being pro se, similarly request that this Court waive the requirements of FRCP Rule 65(c) pertaining to Security, including any requirement to provide a surety bond.

## WAIVER OF FILING FEES

Plaintiffs, being pro se, further request Waiver of any Filing Fees. The four named Plaintiffs are homeless and lack the ability to pay. Plaintiffs Hemingway and Garrity, to date, have financed these efforts from their own pockets. Plaintiff Hemingway is retired and lives on a fixed income. Plaintiff Garrity, while employed, is a student with education expenses.

## PRAYER FOR RELIEF

Wherefore, for reasons cited above, Plaintiffs request that this Court:

1. Immediately issue a TRO enjoining Defendants from closing the Cabin Butte project area on May 1, 2025 and find that Defendants are equitably estopped from displacing Plaintiffs until such time as a mitigation plan has been carried out per Paragraph 3 below.

2. Specifically enjoin the unnamed and unknown contractors that Defendants have engaged for the Cabin Butte project on pain of contempt and that this Court direct Defendants to disclose the unnamed and unknown contractors that Defendant Forest Service has refused to date to disclose;

3. Direct Defendant Jewkes to immediately initiate collaboration with local officials in the project area on a plan akin to the mitigation plan described by Defendant Forest Service in its November 2022 Final EA;

4. Order Defendant USDA to process the Disability Discrimination Complaints that have gone unaddressed and grant reasonable accommodation where justified.

5. Schedule a hearing as soon as possible before a federal Magistrate in Bend, OR to ascertain the parameters of a permanent injunction that would (1) require Defendants to reopen

and redo its NEPA documents to take into account the impact on the human environment; and

(2) permit Defendants after the homeless population have been relocated from the Cabin Butte

project area in a collaborative plan with local officials and service providers, to proceed with a

revised Cabin Butte Vegetation Management project at some future date.

    6. Grant such further relief as may be appropriate under the circumstances.

Respectfully submitted:

_____    4/17/25
Theresa Bradshaw, Plaintiff, Self-Represented; 680 NW Bond St., Bend, OR 97703

_____    4/17/25
Mandy Bryant, Plaintiff, Self-Represented, 680 NW Bond St., Bend, OR 97703

_____    4/17/25
Chris Daggett, Plaintiff, Self-Represented; 680 NW Bond St., Bend, OR 97703

_____    4-17/25
Penny Gartner, Plaintiff, Self-Represented, 680 NW Bond St., Bend, OR 97703

_____    4-17-25
Eric Garrity, Plaintiff, Self-Represented, 680 NW Bond St., Bend, OR 97703

_____    4-17-2025
Charles Hemingway, Plaintiff, Self-Represented

## SERVICE OF PROCESS

On behalf of Plaintiffs, I, CHARLES W. HEMINGWAY, do hereby certify that on this date, _____ we have submitted a copy of this Petition, together with all Exhibits, by Overnight Mail to Defendant Rollins at U.S. Department of Agriculture Headquarters, 1400 Independence Avenue SW, Washington, DC 20250 and to Defendant Bowron at U.S. National Forest Service Headquarters, 1849 C Street NW, Washington, DC 20240 and by personal delivery to Defendant Jewkes, Bend-Fort Rock Ranger District, 63095 Deschutes Market Road, Bend, OR 97701.