**WILLIAM M. NARUS, CAB # 243633**
Acting United States Attorney
District of Oregon
**SEAN E. MARTIN, OSB # 054338**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
sean.martin@usdoj.gov
Telephone: (503) 727-1000
        Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# EUGENE DIVISION

| | |
|---|---|
| **THERESA BRADSHAW, *et al.*,** | **Case No. 6:25-cv-00640-MC** |
| Plaintiffs, | |
| v. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' REQUEST FOR TEMPORARY RESTRAINING ORDER** |
| **HOLLY JEWKES, *et al.*,** | |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

LEGAL STANDARDS .......................................................................................1

   I.    Standard for a Temporary Restraining Order .....................................1

   II.   Pro se Plaintiffs may only represent themselves and may not
        pursue claims on behalf of others ..........................................................2

   III.  The homeless service provider plaintiffs lack standing .....................3

FACTUAL BACKGROUND ..............................................................................3

   I.    The Cabin Butte project ........................................................................3

   II.   This litigation .........................................................................................7

ARGUMENT .......................................................................................................8

   I.    Plaintiffs fail to establish a likelihood of success or serious
        questions on the merits .........................................................................8

      A. Plaintiffs' NEPA claims have no likelihood of success .......................8

          1. There are fundamental threshold problems with Plaintiffs' NEPA
            claims..............................................................................................9

          2. There are substantive problems with the merits of Plaintiffs'
            NEPA claims ................................................................................ 11

             a. The Forest Service did not violate any regulation.................. 11

             b. The Forest Service abided by the applicable notice
                requirements ......................................................................... 13

      B. Plaintiffs' allegations regarding disability discrimination
          complaints show no likelihood of success ......................................... 14

   II.   Plaintiffs fail to demonstrate a likelihood of irreparable harm ....... 15

III.    Neither the balance of equities nor the public interest favors issuance of a TRO ............................................................. 18

CONCLUSION ............................................................................... 21

CERTIFICATE OF SERVICE ....................................................... 22

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aguilar v. King*, No. 6:23-cv-01064-AA, 2023 WL 4763962
(July 26, 2023) ........................................................................ 2, 3

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ........... 2, 18

*Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934 (9th Cir. 2005) ............. 10

*Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668
(9th Cir. 1988) ............................................................................ 17

*City of Sausalito v. O'Neill*, 386 F.3d 1186 (9th Cir. 2004) .............................. 9

*Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752 (2004) .................................... 20

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) .................... 18

*Dunn & Black P.S. v. United States*, 492 F.3d 1084 (9th Cir. 2007) ............... 8

*Headwaters, Inc. v. Bureau of Land Mgmt.*, 665 F. Supp. 873
(D. Or. 1987) ........................................................................... 15-16

*Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239
(9th Cir. 2013) ............................................................................ 17

*Holloman v. Watt*, 708 F.2d 1399 (9th Cir. 1983) ............................................ 8

*Lindberg v. U.S. Forest Serv.*, 132 F. Supp. 3d 1255 (D. Or. 2015) ................. 9

*Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012) ............................................... 2

*Lydo Enterprises, Inc. v. Las Vegas*, 745 F.2d 1211 (9th Cir. 1984) .............. 16

*Marshall obo Pfeiffer v. Gen. Motors/Corp. Serv. Co.*,
2018 WL 5920037 (S.D. Cal. Nov. 13, 2018) .............................................. 16

*Morris v. Myers*, 845 F. Supp. 750 (D. Or. 1993) ........................................... 10

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co., Inc.*,
463 U.S. 29 (1983) ...................................................................... 12

*Pac. Kidney & Hypertension LLC v. Kassakian*, 156 F. Supp. 3d 1219
(D. Or. 2016)................................................................................ 1

*Shoreline All. v. Tennessee Valley Auth.*,
961 F. Supp. 2d 890 (W.D. Tenn. 2013)..................................... 10

*Simon v. Hartford Life, Inc.*, 546 F.3d 661 (9th Cir. 2008) .............. 2

*Tri–Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113
(9th Cir. 2012)............................................................................. 12

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*,
435 U.S. 519 (1978) ............................................................... 13-14

*Wedges/Ledges of Ca. Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56
(9th Cir. 1994).................................................................... 3, 4, 5

*W. Radio Servs. Co. v. Espy*, 79 F.3d 896 (9th Cir.1996)................. 11

*Wild Wilderness v. Allen*, 871 F.3d 719 (9th Cir. 2017)................... 14

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)........... 1-2, 15, 18

## FEDERAL STATUTES

28 U.S.C. § 1331................................................................................. 8

## FEDERAL RULES

Fed. R. Civ. P. 4(i)(1)......................................................................... 7

## FEDERAL REGULATIONS

36 C.F.R. § 218.5 .............................................................................. 5

36 C.F.R. § 218.7 .......................................................................... 5, 13

36 C.F.R. § 218.14 ............................................................................ 9

## OTHER AUTHORITIES

11A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2949
(3d ed. 2019) ................................................................................. 17

This Court should deny Plaintiffs' request for a Temporary Restraining Order ("TRO"). Plaintiffs—four homeless individuals and two individual homeless service providers—have not carried their necessary burden to obtain the drastic remedy of a TRO against the May 1, 2025 public closure of the Cabin Butte project area. As Defendants explain below, none of the necessary elements support a TRO. Plaintiffs fail to show a likelihood of success, or serious questions, regarding the merits of their claims. They also fail to show a likelihood of irreparable harm. Finally, the balance of equities and the public interest do not support Plaintiffs.

## LEGAL STANDARDS

### I. Standard for a Temporary Restraining Order

In deciding whether to grant a motion for a TRO, "courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction." *Pac. Kidney & Hypertension LLC v. Kassakian*, 156 F. Supp. 3d 1219, 1222 (D. Or. 2016). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must show (1) that he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary

relief; (3) the balance of the equities tips in his or her favor; and (4) an injunction is in the public interest. *Id.* at 20.

In the Ninth Circuit, courts may apply an alternative test which allows for a preliminary injunction where a plaintiff shows "serious questions going to the merits" and the balance of hardships tips sharply in plaintiff's favor, assuming the other two elements of the *Winter* test are met. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion by a "clear showing" of the four elements set forth above. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

## II. Pro se Plaintiffs may only represent themselves and may not pursue claims on behalf of others.

Plaintiffs, being *pro se*, can only represent themselves, not others. The Ninth Circuit has routinely adhered to the general rule prohibiting *pro se* plaintiffs from pursuing claims on behalf of others in a representative capacity. *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008). As such, there are no homeless individuals properly before this Court except the four named homeless individual Plaintiffs. *See Aguilar v. King*, No. 6:23-cv-01064-AA, 2023 WL 4763962, *2 (D. Or. July 26, 2023) (rejecting representative capacity for *pro se* plaintiffs to represent other homeless individuals in the Bend area).

### III. The homeless service provider plaintiffs lack standing

For Plaintiffs Garrity and Hemingway—both self-represented homeless service providers—there is no third-party standing doctrine that provides them standing in this action when the homeless individual plaintiffs are already parties and when Garrity and Hemingway are not homeless and are not residing in the Cabin Butte project area. *See Aguilar*, 2023 WL 4763962 at *2 (finding that Garrity lacked standing to bring any claim in a prior case brought in this Court by homeless individuals); *Wedges/Ledges of Ca. Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994) (rejecting third-party standing where directly injured parties are joined in the suit).

## FACTUAL BACKGROUND

### I. The Cabin Butte project

In January 2023, the U.S. Forest Service authorized the Cabin Butte Vegetation Management Project over a nearly 26,000-acre area of federal lands. Exhibit ("Exh.") B at p. 4, Declaration of Holly Jewkes ("Jewkes Decl."). The project area is less than one mile from the City of Bend's urban growth boundary and crosses U.S. Highway 97, and nearly half of the project area is within the wildland urban interface as defined by the Greater Bend Community Wildfire Protection Plan. *Id.* at pp. 4-5. The project authorizes

mechanical thinning, prescribed burning, and other active management to lower the threat of wildfires and improve public safety by reducing hazardous fuels. *Id*. at p. 7; Exh. A at pp. 6-10, Jewkes Decl. The area is fire prone. Exh. A at pp. 68-71, Jewkes Decl. No environmental advocacy groups have objected to the project and none have challenged the project in court.

The China Hat road (also known as Forest Road 18) goes through the project area. Exh. A at p. 5, Jewkes Decl. The China Hat area contains a significant number of homeless individuals who are residing in unauthorized encampments. *See id*. at pp. 68-69, 224; Exhs. F & G, Jewkes Decl. (photos of trash and encampments). There has been a steady increase of human-caused fire starts in the area that correlates with the increase in the population in the encampments. *Id*. at pp. 68-69. From 2020 to 2024, there were 95 fire starts in the project area. Of these, 90 were human caused. Jewkes Decl. ¶ 8 & Exh. D, Jewkes Decl.

The January 2023 project decision was the culmination of a years-long National Environmental Policy Act ("NEPA") process, in which none of the Plaintiffs participated. Original plans for the project were published in 2019. Exh. A at p. 16, Jewkes Decl. In May-June 2022, the Forest Service invited public comments on a draft Environmental Assessment ("EA") regarding the project. *Id*. None of the Plaintiffs here provided comments. *Id*. at p. 318.

In November 2022, the Forest Service published a 398-page final Environmental Assessment ("EA") that identified the purpose and need for action, discussed project alternatives, and assessed the effects of the project on a host of resources.  Exh. A, Jewkes Decl.  The EA noted increased human-caused fire starts in the project area that "directly correlate[s] with the increase of the long-term homeless population that resides within the project area." *Id.* at p. 68.  The EA also acknowledged that the project could temporarily displace public users of the area and could disproportionately affect individuals experiencing homelessness who reside in the project area. *Id.* at p. 224.  The EA noted outreach strategies that the Forest Service would employ during implementation to reduce impacts to these individuals while addressing resource damage and public health/safety concerns.  *Id.*

In November 2022, the Forest Service also published a draft Decision Notice and Finding of No Significant Impact for the project.  Exh. B, at p. 19. Under the agency's administrative objection regulations, this triggered an opportunity for objections to the project.  *See* 36 C.F.R. § 218.7(b).[1]  Plaintiffs did not file any objections.  Jewkes Decl. ¶ 6.

After the Forest Service authorized the project in January 2023 via a

_____

[1] Under the regulations, those eligible to file objections are those who, earlier in the project process, submitted timely written comments during any designated opportunity for public comment.  36 C.F.R. § 218.5.

final Decision Notice and Finding of No Significant Impact, it began collaborating with the City of Bend, Deschutes County, and other partners regarding the China Hat situation and the potential implementation of a restoration closure of the project area. *See* ECF 1-15 at 27-31 (news article); Exh. E, Jewkes Decl.

On January 16, 2025, the Deschutes National Forest announced that the Cabin Butte project area would be temporarily closed for at least a year starting on May 1, 2025, to ensure public safety and support the project's forest restoration actions. Exh. C, Jewkes Decl.[2] The closure will restrict all day use and overnight camping, as crews operate heavy machinery, conduct prescribed burns, and clean up hazardous materials. *Id.* The closure will affect popular local recreational features including trailheads, off-highway vehicle areas, a cave, and rock pits used for recreational shooting. *Id.*

Beginning in January 2025, Forest Service personnel have made early, in-person notifications to homeless individuals in the China Hat area to provide individuals ample time to find more suitable living situations. Jewkes Decl. ¶ 18 & Exhs. I, J. The Forest Service has also worked with local service providers regarding outreach and an appropriate strategy to

_____

[2] Accordingly, the Deschutes National Forest later issued a formal closure order.

implement the area closure. *Id.*

On April 4, 2025, Deschutes National Forest Supervisor Holly Jewkes wrote Plaintiffs Hemingway and Garrity, in response to their request (at ECF 1-11) to delay or cancel the project. Exh. E, Jewkes Decl. As Ms. Jewkes explained, the May 1 closure is necessary because mechanical fuels reduction and prescribed fire work cannot overlap with recreational day-use activities and overnight camping. *Id.* "It's not safe for the public to be in the area while heavy machinery is operating, trees are being felled, mowing operations are active, and prescribed burning is occurring." *Id.* Ms. Jewkes also noted that the area's unauthorized encampments do not change the project's purpose. *Id.* Nor does the Forest Service consider the encampments to be new information or changed conditions. *Id.*

## II.    This litigation

On April 18, 2025, Plaintiffs filed their "Complaint for Injunction/Temporary Restraining Order." ECF 1. At the time of this writing, Plaintiffs have not served the U.S. Attorney's Office with their pleading; service on the United States is not complete. Fed. R. Civ. P. 4(i)(1).[3]

No community or service organizations have joined Plaintiffs' request

---

[3] This Court provided the U.S. Attorney's Office with a copy of the pleading and ordered a response by April 28, 2025. ECF 8.

for a TRO.

# ARGUMENT

## I. Plaintiffs fail to establish a likelihood of success or serious questions on the merits.

Plaintiffs' complaint/request for a TRO, ECF 1, does not identify any waiver of the government's sovereign immunity. Plaintiffs assert jurisdiction under the "federal question" statute (28 U.S.C. § 1331), ECF 1 ¶ 15, but that statute does not waive the government's sovereign immunity. *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983).

A party asserting claims against the federal government bears "the burden of establishing that its action falls within an unequivocally expressed waiver of sovereign immunity by Congress." *Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007).

### A. Plaintiffs' NEPA claims have no likelihood of success.

As best as Defendants can determine, given Plaintiffs' *pro se* status, Plaintiffs predominantly allege NEPA claims against the Forest Service's November 2022 EA. *See* ECF 11 (Plaintiffs' assertion that the November 2022 EA for the Cabin Butte project "failed to meet NEPA requirements"); ECF 1-13 (April 2025 letter to Forest Service from Plaintiff Hemingway asserting a "failure" and other "shortcomings" in the Cabin Butte EA). NEPA does not contain provisions for judicial review, so NEPA claims would be

reviewed under the Administrative Procedure Act ("APA"). *See City of*

*Sausalito v. O'Neill*, 386 F.3d 1186, 1205 (9th Cir. 2004).

### 1. There are fundamental threshold problems with Plaintiffs' NEPA claims.

Fundamental threshold problems with Plaintiffs' NEPA claims show

that Plaintiffs are not entitled to a TRO.

First, Plaintiffs never submitted any objections under the Forest

Service's NEPA process for the Cabin Butte project, so they have no

likelihood of success—and fail to establish any serious questions—on their

challenge to the project and its November 2022 EA. Under 36 C.F.R. §

218.14(a), "[i]ndividuals and groups must structure their participation so as

to alert the local agency officials making particular land management

decisions of their positions and contentions." Further, "[a]ny filing for

Federal judicial review of a decision[]" subject to objection procedures " is

premature and inappropriate unless the plaintiff has exhausted the

administrative review process." *Id*. 218.14(b). Plaintiffs did not file

objections under the established procedures for doing so and their NEPA

challenge to the EA and the project is waived. *See Lindberg v. U.S. Forest*

*Serv*., 132 F. Supp. 3d 1255, 1268 (D. Or. 2015) (citing 36 C.F.R. § 218.14 and

finding that a plaintiff waived a NEPA claim in federal court when he did not

raise the issue during the administrative process).

Second, aside from waiver, Plaintiffs fail to show their interests are protected under NEPA's zone of interests. "We have long described the zone of interests that NEPA protects as being environmental." *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 941 (9th Cir. 2005). This Court has rejected the notion that "homelessness falls within the zone of interests NEPA is intended to protect." *Morris v. Myers*, 845 F. Supp. 750, 756 (D. Or. 1993). Instead, NEPA is intended "to ensure that agencies consider the consequences of their actions on the land, air, water, and other natural resources upon which our society depends." *Id*. at 757. *Accord Shoreline All. v. Tennessee Valley Auth.*, 961 F. Supp. 2d 890, 899 (W.D. Tenn. 2013) (finding that plaintiffs lacked standing for a NEPA claim, noting that their allegation that eviction from campsites "constitutes harm to the physical environment is not supported by the caselaw").

Plaintiffs' complaint does not allege injury to environmental or aesthetic interests, but rather to their personal interests. But unauthorized encampments in the China Hat area are not a legal use of public lands (Exh. E, Jewkes Decl.), and the complaint is devoid of any allegation that Plaintiffs have environmental interests that will be transgressed. Instead, the four homeless individual Plaintiffs allege the threat of losing their homes and possessions. ECF 1 ¶¶ 18-19, 28-30. The other two Plaintiffs are individual

homeless service providers who are concerned about their "ability to function as homeless service providers." ECF 1 ¶ 31.

Given these threshold problems, Plaintiffs cannot show any likelihood of success or serious questions on the merits of their NEPA claims.

### 2. There are substantive problems with the merits of Plaintiffs' NEPA claims.

Even if Plaintiffs' waiver and NEPA zone-of-interests problems are overlooked, Plaintiffs cannot show any likelihood of success or serious questions on the merits of their NEPA claims.

### a. The Forest Service did not violate any regulation.

Plaintiffs allege that the Forest Service "violated its own regulation" regarding NEPA planning. ECF 1 ¶ 25. According to Plaintiffs, Section 18 of the Forest Service Handbook required that the agency reopen the Cabin Butte EA in 2025. *See also id.* ¶¶ 35-37, 40. Plaintiffs are incorrect. Ninth Circuit precedent states that provisions in the Forest Service Handbook ("Handbook") do not bind the agency; the Handbook does not create mandatory duties upon which the government could be liable. *W. Radio Servs. Co. v. Espy*, 79 F.3d 896, 901-02 (9th Cir.1996).

In any event, the Forest Service's decision not to reopen the November 2022 EA was neither arbitrary nor capricious.[4]  *See* Exh. E, Jewkes Decl. The EA had disclosed that the project could displace homeless campers, and Plaintiffs never raised any concerns during the NEPA process.  Exh. A at p. 224, Jewkes Decl.  Further, Plaintiffs are wrong that there was an "exponential increase in the number of unauthorized encampments" that only arose after the November 2022 EA.  ECF 1 ¶ 38.  The Forest Service was well aware, before the EA was completed, that the population had grown and that there were more than 200 homeless individuals living in the area.  Exh. H, Jewkes Decl.  Plaintiffs therefore cannot establish that there was an increase in unauthorized encampments between November 2022 and March 2025— and that the environmental effects of the Cabin Butte project would somehow change and require reopening the EA.  "Whether new information requires supplemental analysis is a classic example of a factual dispute the resolution of which implicates substantial agency expertise."  *Tri–Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130 (9th Cir. 2012) (cleaned up).

---

[4] Under the APA, an agency action is arbitrary and capricious only "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co., Inc.*, 463 U.S. 29, 43 (1983).

### b. The Forest Service abided by the applicable notice requirements.

Plaintiffs allege that they did not receive adequate notice of the Cabin Butte project and the upcoming public closure of the area. ECF 1 ¶ 12. But the Forest Service abided by the applicable regulations and Plaintiffs fail to identify any notice requirements that the agency failed to follow.

The regulations require that the agency provide its final EA and the draft NEPA Decision Notice and Finding of No Significant Impact "to those who have requested the documents" or those who already commented on a project. 36 C.F.R. § 218.7(b). Here, the agency did so. See ECF 1 ¶ 5; Exh. B at p. 19, Jewkes Decl. Plaintiffs did not request these documents and did not earlier comment on the project. Jewkes Decl. ¶ 6; Exh. A at p. 318, Jewkes Decl.

Under the regulations, the agency must also publish notice of the opportunity to object to a project in a newspaper of record. 36 C.F.R. § 218.7(b), (c). The Forest Service met this requirement, as Plaintiffs acknowledge. *See* ECF 1 ¶ 4; Exh. B at p. 19, Jewkes Decl.

Plaintiffs cite no authority for their notion that there are additional notice requirements that apply here. They have no likelihood of success on their notice claim. The case law cautions courts not to "engraft[ ] their own notions of proper procedures upon agencies entrusted with substantive

functions by Congress." *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 525 (1978); *Wild Wilderness v. Allen*, 871 F.3d 719, 726-27 (9th Cir. 2017) (rejecting a "novel procedural requirement" underpinning a NEPA claim, and citing *Vt. Yankee*).

It is also noteworthy that at least two of the individual homeless Plaintiffs had notice <u>before</u> 2025, via CVB proceedings in this Court, that their long-term residency in the China Hat area was illegal.[5]

### B. Plaintiffs' allegations regarding disability discrimination complaints show no likelihood of success.

To the extent that the four homeless individual Plaintiffs allege claims regarding a supposed failure to process their disability discrimination complaints for reasonable accommodations,[6] *see* ECF 1 ¶13, they fail to establish a likelihood of success or serious questions on the merits.

Plaintiffs fail to identify any congressional waiver of the government's sovereign immunity that would allow them to maintain their claims, especially in the context of unauthorized use of public lands and a valid

---

[5] Plaintiff Daggett was cited for CVB violations in November 2024 and this Court has ordered his mandatory appearance. *See United States v. Daggett*, No. 6:24-po-00571-JR-1. Plaintiff Gartner was cited for a CVB violation in 2022. *United States v. Gartner*, No. 6:22-PO-391-JR.

[6] Plaintiffs as *pro se* litigants may not act in a representative capacity for other identified individuals who may have filed disability complaints. *See supra* Legal Standards II.

closure of an area for public safety given active forestry operations. Even if there were a judicially reviewable deadline or mandate for when the agency must complete processing a complaint for reasonable accommodation in the context presented here, Plaintiffs have not supplied copies of their complaints or identified when they were provided to the agency. Further, Plaintiffs ask this Court to accept their conclusory allegations asserting the existence of a disability, without supplying evidence of any disability.

Plaintiffs have therefore failed to meet their burden to establish a likelihood of success or serious questions on the merits of their complaint-processing allegations.

## II. Plaintiffs fail to demonstrate a likelihood of irreparable harm.

To obtain the "extraordinary remedy" of an injunction, Plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original).

Plaintiffs' contention that the May 1 closure of the Cabin Butte project area will irreparably harm them is undermined by their delay in seeking extraordinary equity. As this Court found in denying a preliminary injunction motion against a federal forest project, a plaintiff's delay of "nearly half a year" before bringing suit justified denial of the motion. *Headwaters,*

*Inc. v. Bureau of Land Mgmt.*, 665 F. Supp. 873, 876 (D. Or. 1987). "[D]elay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief." *Id.* (citing *Lydo Enterprises, Inc. v. Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984)).

Here, as Plaintiffs know, the Forest Service notified the public more than three months ago—on January 16, 2025—that closure would occur on May 1, 2025. Plaintiffs fail to explain why they waited until late April 2025 to first seek a TRO. Plaintiffs are responsible for creating the emergency they now claim justifies extraordinary relief. While the government understands Plaintiffs are *pro se*, and as such are afforded some leniency, the exigency they claim is a crisis of their own making. *See Marshall obo Pfeiffer v. Gen. Motors/Corp. Serv. Co.*, No. 18-cv-2551-GPC-JLB, 2018 WL 5920037, *2 (S.D. Cal. Nov. 13, 2018) (denying *pro se* request for TRO where plaintiff waited one month after actual notice of foreclosure action to seek federal relief).

Plaintiffs, further, have not proffered any evidence of irreparable harm. Of the six Plaintiffs, none have submitted any sworn statement except Mr. Hemingway, who is not a homeless individual and who does not live in the project area. ECF 1-14 at 1. Further, Mr. Hemingway's statement does not articulate any irreparable harm to his interests. *See id.*

The evidentiary support for the requested TRO falls short of showing that irreparable harm is likely and imminent. "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Serv. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). *See also* 11A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2949 (3d ed. 2019) ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction."); *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013) (a party seeking injunctive relief "must proffer evidence sufficient to establish a likelihood of irreparable harm").

Further, the allegations in the complaint—even standing alone without evidence—do not demonstrate irreparable harm. The complaint alleges that Plaintiff Bryant will lose her fifth-wheel RV unless there is a TRO (ECF 1 ¶ 29), but according to *The Oregonian* Bryant indicated that she is planning to get help to haul her fifth-wheel RV to her mother's property in Bend. https://www.oregonlive.com/crime/2025/04/imminent-crisis-looms-as-feds-set-deadline-to-remove-more-than-100-homeless-campers-from-forest-outside-bend.html (last visited April 28, 2025). Similarly, according to *The*

*Oregonian*, Plaintiff Gartner indicated that she has been moving her belongings to a supportive housing unit in Bend. *Id.* "It took something like this to actually make me do it," she said, according to *The Oregonian. Id.*[7]

A court cannot award a preliminary injunction based on a mere possibility of irreparable harm. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Plaintiffs fail to establish a likelihood of irreparable harm, and a TRO is therefore unwarranted.

## III. Neither the balance of equities nor the public interest favors issuance of a TRO.

A party seeking injunctive relief must establish "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Where the government is a party, the public interest and the balance of equities factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (cleaned up).

---

[7] Plaintiffs' TRO filing includes an exhibit with a portion of the article in *The Oregonian* that attributes statements to Plaintiffs Bryant and Gartner, ECF 1-5 at 47, but the exhibit omits the "actually make me do it" quote from Plaintiff Gartner.

Here, both the balance of equities and the public interest weigh against a TRO. Enjoining the long-announced closure of the Cabin Butte project area will slow and frustrate progress for a project with public-safety and ecological benefits. There is a strong public interest in not compromising steps to reduce fire risk and public safety so close to the City of Bend and within the defined wildland-urban interface. Enjoining the public closure of the project area will not benefit the environment, but will keep a dangerous status quo in place—with high occurrences of human-caused fire starts—as central Oregon fire season approaches. *See* Jewkes Decl. ¶¶ 8, 14; Exhs. F & G, Jewkes Decl. (2025 photos of encampments and trash in the area.)

The balance of equities and public interest favor the Forest Service, which has already entered into formal contractual arrangements for the project work and planned the public closure such that project work can commence this year before fire-season restrictions come into play. *Id.* ¶¶ 10-12, 14-15. Further, the equities and public interest favor the Forest Service, as the closure was planned such that it occurs prior to fire season and the high recreation use season when staff and other resources will be pulled away to other priorities. *Id.* ¶ 16. Although no approach is perfect here given the difficult mix of homelessness, fire risks, and land-management needs, the Forest Service has thoughtfully considered alternatives and the best way to

proceed, and the existing closure date is on balance reasonable and in the public interest. *See id.* ¶¶ 19, 21-25.

Meanwhile, it is not in the public interest to permit litigants to entirely sit out an administrative process and then years later, after a final project decision, rush into court with claims challenging the project. The Supreme Court has established that litigants "challenging an agency's compliance with NEPA must structure their participation so that it . . . alerts the agency to the [parties'] position and contentions, in order to allow the agency to give the issue meaningful consideration." *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 764 (2004) (cleaned up).

Also salient to the public interest is that no community or service organizations have joined Plaintiffs' request for a TRO. Nothing prevents the four homeless individual Plaintiffs here from taking steps to reside elsewhere than in unauthorized encampments within the closure area. Indeed, as Plaintiffs allege, Plaintiff Gartner "has been offered the opportunity to move into a supportive housing unit in Bend." ECF 1 ¶ 30. The Forest Service has also taken steps to assist those residing in the China Hat area and notify them of the area closure. Jewkes Decl. ¶¶ 18-19, 21. And nothing prevents Plaintiffs Garrity and Hemingway from assisting the four individuals with relocating and connecting with available resources.

**CONCLUSION**

For these reasons, this Court should deny Plaintiffs' request for a TRO.

DATED this 28th day of April 2025.

Respectfully Submitted,

WILLIAM M. NARUS
Acting United States Attorney

*/s/ Sean E. Martin*
SEAN E. MARTIN
Assistant U.S. Attorney
   Attorneys for Defendants

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was placed within a first-class postage prepaid envelope and deposited in the United States Mail within the offices of the United States Attorney or at a United States Post Office according to established office practice at Portland, Oregon, on April 28, 2025, addressed to:

Charles Hemingway
680 NW Bond Street
Bend, OR 97703-3274
*Plaintiff Pro Se*

Chris Daggett
680 NW Bond Street
Bend, OR 97703
*Plaintiff Pro Se*

Mandy Bryant
680 NW Bond Street
Bend, OR 97703
*Plaintiff Pro Se*

Penny Gartner
680 NW Bond Street
Bend, OR 97703
*Plaintiff Pro Se*

Theresa Bradshaw
680 NW Bond Street
Bend, OR 97703
*Plaintiff Pro Se*

*/s/ Keith Ramsey*
KEITH RAMSEY
Supervisory Paralegal Specialist